**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CV 11-00698-PHX-FJM |
| Plaintiff, | **ORDER** |
| vs. | |
| James Leslie Reading, et al., | |
| Defendants. | |

We have before us James Leslie Reading, Clare L. Reading, and Fox Group Trust's motion to dismiss complainant's seventh claim (doc. 50), defendants' memorandum in support (doc. 51), plaintiff's opposition (doc. 67), and defendants' reply (doc. 68). We also have before us plaintiff's motion for summary judgment (doc. 52), memorandum in support (doc. 52 ex. 1), and statement of material facts in support (doc. 52 ex. 2), James and Clare Reading's response (doc. 82), the Readings' memorandum in support of defendants' response (doc. 82 at 6), the Readings' response to plaintiff's statememt (sic) of facts (doc. 82 at 21), the Readings' separate statement of facts (doc. 82 at 67), the Readings' notice to amend defendants' separate statement of facts (doc. 96), plaintiff's reply (doc. 90), the Readings' motion for leave of court to file surreply (doc. 92), plaintiff's response (doc. 93), and the Readings' reply (doc. 95). Plaintiff seeks summary judgment on all claims except count three, which it voluntarily dismisses.

# I

Plaintiff brings this action against James and Clare Reading, a married couple, to reduce tax assessments to judgment and foreclose statutory liens arising from assessments upon real property.  The last time Mr. Reading voluntarily made a payment to the IRS was in 1989.  He worked for three companies affiliated with Pilot Catastrophe Insurance ("Pilot") in 1993 and received $77,359.24 in compensation that year.  On their 1993 joint federal income tax return, the Readings declared under oath that they had zero wages and salary and zero taxable income.  In 1994, Mr. Reading received over $156,000 in compensation from Pilot companies, but reported zero wages and salary and zero taxable income on the Readings' 1994 joint tax return.  Mr. Reading received over $117,000 in compensation from Pilot  in 1995, but again reported zero wages and salary and zero taxable income on the Readings' 1995 joint return.  The Readings filed their 1993, 1994, and 1995 returns on or after December 24, 2008.  For all three years, Mr. Reading also submitted corrected 1099-MISC forms swearing that Pilot erroneously identified payments to him as gains, profit or income made in the course of a trade or business.  Plaintiff contends that the IRS mailed a Notice of Deficiency to the Readings in 2000 for the tax years 1993, 1994, and 1995, but they declare they never received the notice.

In 2008, Mr. Reading made $23,858 by working for Colonial Claims Corporation. The Readings declared under oath on their 2008 tax return that they had zero wages and salary and zero taxable income, and a concurrently filed 1099-MISC form stated that Mr. Reading received zero compensation from Colonial Claims Corporation.  The IRS mailed a Notice of Deficiency to Mr. Reading on February 16, 2010 for his 2008 income tax year.

In 1979, James and Clare Reading purchased a house in Mesa, Arizona as joint tenants with right of survivorship.  The purchase price was approximately $68,000.  On or about June 10, 2005, they transferred the house to Fox Group Trust by quit claim deed.  The house was worth approximately $110,000 at the time.  Fox Group Trust gave no consideration for this transfer other than allowing the Readings to continue living on the property as they did before the transfer.  The Readings have not paid rent and they continue to be personally

1   obligated on the note which is secured by a mortgage on the house.  The Readings pay all

2   utilities, county real estate taxes, and mortgage payments.   The Readings act as

3   administrative trustees for Fox Group Trust.

4   **II**

5   When considering a motion to dismiss pursuant to Rule 12(b)(6), Fed. R. Civ. P., "a

6   court must construe the complaint in the light most favorable to the plaintiff and must accept

7   all well-pleaded factual allegations as true." Shwarz v. United States, 234 F.3d 428, 435 (9th

8   Cir. 2000).  On the other hand, a court is "not bound to accept as true a legal conclusion

9   couched as a factual allegation." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct.

10  1955, 1965 (2007) (quoting Papasan v. Allain, 478 U.S. 265, 286, 106 S. Ct. 2932, 2944

11  (1986)).

12  Plaintiff's seventh claim asserts that the Readings' transfer of their house to Fox Group

13  Trust was a fraudulent conveyance under the Arizona Uniform Fraudulent Transfer Act

14  ("AUFTA").  Section 44-1009 provides that a claim for fraudulent conveyance under A.R.S.

15  § 44-1004(A)(1) "is extinguished unless an action is brought . . . within four years after the

16  transfer was made or the obligation was incurred or, if later, within one year after the

17  fraudulent nature of the transfer or obligation was or through the exercise of reasonable

18  diligence could have been discovered by the claimant."  The Readings contend that § 44-

19  1009 is a statute of repose which bars this claim, while plaintiff argues it is a statute of

20  limitations and thus does not bind the federal government.  See United States v. Summerlin,

21  310 U.S. 414, 416, 60 S. Ct. 1019, 1020 (1940) ("the United States is not bound by state

22  statutes of limitation").  Plaintiff filed its complaint April 8, 2011.  Plaintiff does not rely on

23  the one-year limitation period.  Therefore, since the transfer occurred June 10, 2005, this

24  claim is barred if the four-year limit applies to the United States.  If § 1009 does not apply,

25  then the United States has ten years from the date of the assessment to file an action.  26

26  U.S.C. § 6502(a).

27  In Bresson v. Commissioner of Internal Revenue, 213 F.3d 1173 (9th Cir. 2000), the

28  United States Court of Appeals for the Ninth Circuit determined that the California Uniform

1   Fraudulent Transfer Act's nearly identical extinguishment provision was a statute of

2   limitations which did not bar the government's claim.  Id. at 1178.  As in this case, the

3   government acted in its sovereign capacity by attempting to collect taxes and its underlying

4   right to collect money derived from the Internal Revenue Code.  Id.; cf. United States v. Cal.,

5   507 U.S. 746, 113 S. Ct. 1784 (1993) (government became entitled to claim by indemifying

6   a private contractor's state-law debt and could assert claim only through subrogation, an

7   equitable action created by courts; therefore, Summerlin was "clearly distinguishable").

8   "[S]tates 'transgress the limits of state power' when they attempt to set limitations periods on

9   claims acquired by the United States in its governmental capacity."  Id. at 1179.  Thus, like

10  California's statute, Arizona's "'extinguishment' provision cannot evade the rule of

11  Summerlin."  Bresson, 213 F.3d at 1178.  Therefore defendants' motion to dismiss is denied.

### III

13  Summary judgment is appropriate if there is no genuine dispute as to any material fact

14  and the movant is entitled to judgment as a matter of law.  Rule 56(a), Fed. R. Civ. P. When

15  considering a motion for summary judgment, the court takes undisputed facts as true and

16  evaluates disputed facts in the light most favorable to the non-moving party.  Anthoine v. N.

17  Cent. Cntys. Consortium, 605 F.3d 740, 745 (9th Cir. 2010).

18  The United States' first two claims are to reduce tax and related assessments made

19  against the Readings to judgment.  Assessments against Mr. Reading for his 1993, 1994,

20  1995, and 2008 tax years totaled $556,871.63 as of May 1, 2012.  Assessments against Mrs.

21  Reading for 1994 and 1995 totaled $116,632.96 as of May 1, 2012.  These amounts include

22  taxes, late filing penalties, failure to pay tax penalties, estimated tax penalties, and interest.

23  Defendants dispute plaintiff's calculation of income for 1994 and 1995.  The IRS

24  taxed Mr. Reading on 100% of his compensation for those years and taxed Mrs. Reading on

25  50% of her husband's compensation.  In its reply brief, plaintiff agrees to reduce the amount

26  of compensation received by Mr. Reading by 50% for his 1994 and 1995 tax years and

27  recalculate interest and balances owed for those years.

28  Defendants also dispute the IRS's calculation of capital gains for 1993 and 1994.  The

IRS issued the Notice of Deficiency and adjusted the amount of taxes owed in 2011 after the Readings provided the IRS with more information.  Rather than a gain of $85,889 in 1993, the IRS calculated a loss of $214.59 for that year.  The IRS reduced capital gains for 1994 from $11,948 per person for Mr. and Mrs. Reading to $4,140.53 per person.  The IRS also reduced a gain of $15,537 to a loss of $77.94 for the 1994 tax year.  These capital gains adjustments resulted in tax decreases and downward penalty adjustments for the years 1993 and 1994.  Defendants' arguments on this issue ignore the IRS's adjusted calculations and the government's use of the lower revised numbers in this action.

Defendants' remaining arguments against the assessments and penalties are without merit.  The Readings apparently believe that compensation received from an employer is not taxable because money was received in exchange for labor and time.  "The assertion that proceeds received for personal services cannot be given a 'zero-basis for the purpose of the assessment of taxation,' is frivolous."  Carter v. Comm'r of Internal Revenue, 784 F.2d 1006, 1009 (9th Cir. 1986); see also 26 U.S.C. § 61 ("gross income means all income from whatever source derived, including . . . [c]ompensation for services").

The Readings contend that they are not liable for taxes because plaintiff has not identified a statute which makes them liable to pay a tax.  This is frivolous.  The Internal Revenue Code imposes a tax on the taxable income of individuals.  26 U.S.C. § 1(a)-(d).  Every person whose gross income exceeds the exemption amount must file an income tax return.  26 U.S.C. § 6012(a).  When a tax return is required, the taxpayer must pay the tax without assessment or notice and demand from the IRS.  26 U.S.C. § 6151(a).  Many statutes make defendants liable to pay taxes on their income.

Defendants assert that there is no evidence the Secretary of the Treasury properly delegated authority to IRS employees.  "Relevant statutes and regulations demonstrate, however, that the Secretary does have the power to collect taxes, and that such power can be delegated to local IRS agents."  Hughes v. United States, 953 F.2d 531, 536 (9th Cir. 1992).  The Secretary is authorized to send a Notice of Deficiency to a taxpayer pursuant to 26 U.S.C. § 6212(a).  For purposes of this statute, "Secretary" also includes his delegate, which

1    is defined as "any officer, employee, or agency of the Treasury Department."  26 U.S.C. §

2    7701(a)(11)-(12).  Regulations also specifically task district directors with collecting taxes

3    and mailing Notices of Deficiency, see 26 C.F.R. §§ 301.6301-1, 301.6212-1, and allow them

4    to redelegate these functions.  26 C.F.R. § 301.7701-9.  Delegation down the chain of

5    command is valid.  There is no statutory requirement that the Secretary of the Treasury or his

6    delegate sign a Notice of Deficiency for it to be valid.  See Urban v. Comm'r of Internal

7    Revenue, 964 F.2d 888, 889 (9th Cir. 1992).  Defendants raise a related argument that the

8    Secretary or his delegate violated the Internal Revenue Manual.  This argument lacks merit

9    because compliance with the Manual is not mandatory.  Id. at 890.

10   Defendants contend that they never received Notices of Deficiency or Notices and

11   Demand pursuant to 26 U.S.C. § 6303.  But evidence submitted by defendants shows that,

12   at the very least, Mrs. Reading received a notice regarding her 1994 and 1995 tax years.

13   (Doc. 83, ex. MM).  Mr. Reading also admits that he received a notice for his 2008 tax year.

14   The only notices left at issue are  for Mr. Reading's 1993, 1994, and 1995 tax years.  Even

15   if he did not receive a notice for these years, actual receipt of the notice is not required.

16   Evidence that the government mailed the notices to the taxpayer's "last known address" is

17   sufficient.  26 U.S.C. § 6212(b)(1); Cohen v. United States, 297 F.2d 760, 771-73 (9th Cir.),

18   cert. denied, 369 U.S. 865, 82 S. Ct. 1029 (1962).  The government submits evidence

19   showing that the notices were sent to defendants' home, and defendants fail to submit

20   evidence in rebuttal.  They cannot maintain their argument that summary judgment should

21   be denied because notices were not issued.

22   In addition, they argue that the notices of deficiency were invalid because plaintiff did

23   not create returns on their behalf.  "Deficiency procedures set out in the Internal Revenue

24   Code, 26 U.S.C. §§ 6211-6213, do not require the Commissioner to prepare a return on a

25   taxpayer's behalf before determining and issuing a notice of deficiency."  Roat v. Comm'r of

26   Internal Revenue, 847 F.2d 1379, 1381 (9th Cir. 1988).

27   Defendants have failed to raise a genuine dispute of material fact.  Their arguments

28   against the assessments are meritless.  The United States is entitled to summary judgment on

1   its first and second claims.

2   **IV**

3   Plaintiff's next two claims are to reduce penalty assessments made against the

4   Readings to judgment. The IRS made frivolous return penalty assessments against Mr. and

5   Mrs. Reading which now total $16,739.18 for Mr. Reading and $16,793.78 for Mrs. Reading.

6   Pursuant to 26 U.S.C. § 6702, a person who submits a frivolous return must pay a penalty.

7   The government has the burden of proof on whether a taxpayer is liable for a penalty. 26

8   U.S.C. § 7603(a).

9   Defendants dispute that penalties can be assessed for frivolous tax returns. "[A] return

10  which shows no tax liability and no recognizable basis for reaching such a conclusion" is a

11  return which "does not contain information on which the substantial correctness of the self-

12  assessment may be judged within the meaning of section 6702." Fuller v. United States, 786

13  F.2d 1437, 1439 (9th Cir. 1986). The Readings' assessment of their taxes was substantially

14  incorrect and their position on wages being exempt from income is without merit. As a

15  result, the frivolous return penalties assessed under § 6702 are fully justified. The United

16  States is entitled to summary judgment on its fourth and fifth claims seeking frivolous return

17  penalty assessments.

18  **V**

19  Plaintiff's final three claims relate to the transfer of real property from the Readings

20  to Fox Group Trust. The United States asks that we set aside the transfer as a fraudulent

21  conveyance or, in the alternative, find that Fox Group Trust holds title to the property as a

22  nominee or alter ego of James and Clare Reading. Plaintiff also seeks to foreclose federal

23  tax liens against the property. Defendants James and Clare Reading fail to address these

24  causes of action in their response to the motion for summary judgment, and defendant Fox

25  Group Trust did not file a response.

26  Pursuant to 26 U.S.C. § 6321, if a person liable to pay taxes neglects or refuses to pay

27  after demand, the amount "shall be a lien in favor of the United States upon all property and

28  rights to property, whether real or personal, belonging to such person." This lien "shall arise

1   at the time the assessment is made and shall continue until the liability for the amount so

2   assessed (or a judgment against the taxpayer arising out of such liability) is satisfied or

3   becomes unenforceable by reason of lapse of time." 26 U.S.C. § 6322.  The IRS has made

4   assessments and the Readings have failed to pay.  Therefore, statutory tax liens have arisen

5   and are currently in effect because the Readings have outstanding liabilities.

6          The court looks "to state law to determines what rights the taxpayer has in the

7   property the Government seeks to reach." Drye v. United States, 528 U.S. 49, 58, 120 S. Ct.

8   474, 481 (1999).  Federal law then determines whether these rights qualify as "property" or

9   "rights to property" to which a federal lien may attach.  Id.

10         The United States first claims that the transfer of the house was a fraudulent

11  conveyance made with "actual intent to hinder, delay or defraud any creditor of the debtor."

12  A.R.S. § 44-1004(A)(1).  Section 44-1004(B) lists eleven "badges of fraud" which tend to

13  show the existence of fraudulent intent.  Torosian v. Paulos, 82 Ariz. 304, 312, 313 P.2d 382,

14  388 (1957).  The most relevant here are that the debtors retained possession and control over

15  the property after the transfer and that the value of the consideration received was not

16  equivalent to the value of the asset transferred.  In addition, the transfer was to a trust of

17  which the transferors are the administrative trustees.  There is also evidence that the debtors

18  knew of their liabilities to the IRS and the potential that they would be sued to collect the

19  debt at the time of the transfer.

20         Actual intent to defraud plaintiff can be reasonably inferred from defendants' actions.

21  "[S]trong, clear evidence will be required to repel the conclusion of fraudulent intent" when

22  several badges of fraud are found in a single transaction.  Id.  Far from strong evidence, there

23  is no evidence at all to rebut the inference of fraud.  Plaintiff has shown a fraudulent conv

24  eyance by clear and convincing evidence and thus the transfer should be set aside.

25         Alternatively, the IRS can properly regard Fox Group Trust's assets as the Readings'

26  property, subject to a lien in favor of the United States, if Fox Group Trust is a nominee of

27  James and Clare Reading.  G.M. Leasing Corp. v. United States, 429 U.S. 338, 350-51, 97

28  S. Ct. 619, 627 (1977).  State law governs the determination of whether an alter ego or

nominee exists from whom the government may satisfy a taxpayer's obligations. <u>Wolfe v. United States</u>, 806 F.2d 1410, 1411 n.3 (9th Cir.1986). The parties did not cite, and the court did not find, any Arizona case which discusses factors relevant to determining whether a trust is a nominee of an individual. <u>See</u> <u>United States v. Richardson</u>, No. CV-04-0739-PCT-DGC, 2006 WL 3388347, at *6 n.3 (D. Ariz. Nov. 21, 2006) (finding no reported Arizona case addressing nominee status). Factors which suggest nominee status include inadequate consideration paid by the nominee, property placed in the nominee's name in anticipation of a lawsuit while the transferor continues to exercise control over the property, a close relationship between transferor and nominee, failure to record the conveyance, retention of possession by the transferor, and continued enjoyment by the transferor of benefits of the transferred property. <u>Id.</u> at *6; <u>Towe Antique Ford Found. v. IRS</u>, 791 F. Supp. 1450, 1454 (D. Mont. 1992). These factors support Fox Group Trust's status as a nominee. It gave no consideration for the property; the Readings exercise complete control over the house; the Readings are administrative trustees of Fox Group Trust; the Readings retained possession of the house after the transfer; and they continue to enjoy the benefits of the property. The uncontested evidence shows that Fox Group Trust is a nominee of James and Clare Reading.

Under either the theory of fraudulent conveyance or nominee status, the house at issue is property of the Readings which may be reached by plaintiff. Where a party refuses or neglects to pay a tax, the government may file a civil action to enforce a lien with respect to such tax or to subject any property to the payment of such tax. 26 U.S.C. § 7403(a). "If the government proceeds under 26 U.S.C. § 7403 to enforce a lien, once a court declares a transfer fraudulent and void, the asset reverts back to the ownership of the debtor-transferor and federal law governs the foreclosure of the lien and the selling of the asset." <u>United States v. Verduchi</u>, 434 F.3d 17, 20 (1st Cir. 2006). In cases where a claim of the United States is established, the court "may decree a sale of such property, by the proper officer of the court, and a distribution of the proceeds of such sale according to the findings of the court in respect to the interests of the parties and of the United States." 26 U.S.C. § 7403(c).

The transfer to Fox Group Trust is void and the United States has established its

interest in the Readings' residence. Plaintiff may sell the house to satisfy its liens against James and Clare Reading. Plaintiff has entered into stipulations with other defendants regarding the priority of their liens (docs. 35, 36). The proceeds of the sale will be distributed according to these stipulations.

**VI**

James and Clare Reading request leave to file a sur-reply to plaintiff's reply in support of its motion for summary judgment (doc. 92). LRCiv 7.2 does not authorize a response to a reply. A sur-reply is also unnecessary here because plaintiff did not introduce new material in its reply. Nevertheless, the court has read defendants' lodged sur-reply and finds that the arguments contained therein are repetitious of defendants' response and would not change the court's ruling.

**VII**

**IT IS ORDERED DISMISSING** plaintiff's third claim with prejudice.

**IT IS ORDERED DENYING** defendants' motion for leave of court to file surreply (doc. 92).

**IT IS ORDERED DENYING** defendants' motion to dismiss (doc. 50).

**IT IS ORDERED GRANTING** plaintiff's motion for summary judgment (doc. 52). Plaintiff is directed to submit a proposed judgment to the court within ten days of the filing of this order, including updated calculations for Mr. Reading's liabilities for his 1994 and 1995 tax years. The proposed judgment shall include a proposed order of foreclosure and sale regarding the residence.

DATED this 18th day of September, 2012.

*Frederick J. Martone*

Frederick J. Martone
United States District Judge